The cause was defended upon the ground that the bond was overdue when assigned, and that the defendant had a set-off against Barnes to a greater amount.
On the trial at EDGECOMBE, before Swain, J., on the last circuit, the case was that the bond on which the action was brought was for $428, payable on demand, with interest from 1 November, 1820, and dated 9 January, 1821. The plaintiff proved that on 25 November, 1828, Sherwood Haywood sold the perishable property of his intestate upon a credit of six months, the purchasers to give bond with surety; that Barnes purchased a quantity of corn, amounting in value to $408, and not having complied with the terms of the sale, the administrator directed his agent to call for a bond with surety; that on the 27th of the same month Barnes deposited with the agent the bond on which the suit was brought, to remain in pledge until he had complied with the terms of the sale, and at the time of doing this requested the agent to say nothing about it to the defendant; that the agent did not mention the circumstance to McNair until the month of April following, when McNair, upon the bond being presented to him, refused to pay it; that in May following Sherwood Haywood had a conversation with McNair, when the latter observed that "Mr. Jackson had a demand upon the estate of Blount to nearly the amount of the bond, and as he had it to pay, or if he had it to pay, he would prefer making (232) payment to Jackson," and requested that the matter might be arranged accordingly, which was agreed to. In the same conversation the defendant requested that Barnes might be induced to take up the bond and give another security, saying if he could get it back into his hands he had a set-off against it. In the hope of effecting one of these proposed arrangements, the bond was retained by the agent until after 1 July following, when Mr. McNair refusing to pay it, an assignment of *Page 198 
it was taken from Barnes to Sherwood Haywood as administrator. The defendant produced a note for $1,839, dated 28 November, 1828, payable 1 March, 1829, to Sherwood Haywood, signed by him as surety for Barnes, on which there was an indorsement of payment in full on 1 July, 1829.
His Honor left it to the jury to inquire into the character of the transaction between Barnes and the agent of Sherwood Haywood, and instructed them that if they should be satisfied that the request of Barnes not to mention the deposit of the bond to the defendant, and the compliance of the agent with that request was the result of a combination between them to withhold the information from the defendant, that he might be the more easily induced to become the surety of Barnes in the note for $1,839 to Sherwood Haywood, or with the view of defrauding the defendant in any way, the plaintiff would be affected by the fraudulent conduct of the agent, and they ought to find a verdict for the defendant; that if the bond was delivered on 27 November, 1828, in good faith for the purpose of securing the purchases of Barnes, the deposit gave the administrator of Blount an equitable interest in it, and that having subsequently procured an assignment of it, he had thereby acquired a legal title, and had a right to institute this suit; that the fact that the defendant became Barnes' surety on the day following the deposit of the note by the latter constituted no defense to the action, and that even if he had paid the money on that day the assignee, having received the bond on the day previous, had the prior equity.
(233) A verdict was returned for the plaintiff, and the defendant appealed.
This note, although payable on demand, from the great length of time since its date is overdue and therefore dishonored, by which is meant that if assigned it is subject to all defenses and exceptions to its payment in the hands of the assignee, to which it was open in the hands of the assignor. But if the defenses are of a legal nature they are to be made in a court of law; if of an equitable nature they must be made in a court of equity. The equities of the parties are not examinable in a court of law any more than the equities between other parties. Therefore, whether Haywood had a right to call for an assignment before the payment of the money by McNair as Barnes' surety, because the note was in his hands as collateral security for a debt due from Barnes to him, and whether he had not forfeited that right as to McNair by agreeing to keep the deposit secret, and not *Page 199 
disclosing it to McNair, when he accepted him as Barnes' surety for the debt of $1,839, are all questions with which a court of law has nothing to do. And the principal question, and in fact the only one in this case is, what were the legal rights of the parties when the plea of McNair was put in? This depends on the rights of Barnes at the time of the assignment. If it was subject to the defense offered against Haywood, when in the hands of Barnes, it is subject to the same (234) defense in the hands of Haywood, for Haywood took the assignment subject to all exceptions, in his hands, to which it was subject when in those of Barnes at and before the assignment. With this explanation a mere statement of the facts will, I think, decide the question. At the time of the assignment McNair had paid for Barnes, as his surety, money to a greater amount than was due on the note. Barnes was then McNair's debtor to that amount. And if McNair had then been sued by Barnes on this note he could have pleaded this debt in bar to the action as a set-off. Therefore, when sued by Haywood as Barnes' assignee, the same defense being open to him, not to be sure by way of the plea of set-off against Haywood, but in bar of Haywood's action by reason of the set-off which he had against Barnes, the defense must be sustained. For it has been often said before, if the set-off against Barnes was a bar to Barnes' action, it is a bar to Haywood's also. The conversation which passed in April did not amount to such a fraud on the part of McNair as to preclude him from using this defense. Nor is it an abandonment of it. What he then gave up (if he gave up anything) was not purchased by Haywood. He neither paid anything nor did he forego any right in consequence of it; nothing grew out of it beneficial to McNair coming from Haywood. Nor was any loss suffered by Haywood in consequence of any promise made by McNair. But it is evident that no new obligation was intended to be incurred by the one or acquired by the other. I forbear to enter into an examination of the authorities, for they are not in opposition to what has been said. The case in Johnson only establishes this position; that where there is anything flowing from the maker which holds out that a note, although overdue, is still unpaid in whole or in part, as by making payments, he shall not be permitted to say that nothing is due on it. It would be more consistent with principle if it had precluded the maker from showing that nothing had ever been due, as a total mistake in giving it. For the partial payments are in opposition to such an (235) averment. For I cannot see how a partial payment precludes a partial mistake in the amount due being shown. It does not appear to me that such a circumstance renders a dishonored note negotiable again in the proper sense of the term. When a note is given it is an *Page 200 
acknowledgment that the amount is due. The making of a partial payment amounts only to the same thing, that a balance is due, which balance may become dishonored if not paid in a reasonable time on a note due on demand, to which such payment may possibly convert all notes where the time of payment is past. But let this be as it may, McNair held out no false lights as to the facts to Haywood. Haywood was as well acquainted with McNair's ground of defense as McNair himself, and much better with his equitable grounds, from the time he took Barnes' note with McNair as surety until McNair knew that Haywood held the note in question as collateral security for another debt.
There is nothing in the argument that as the demand is not against Haywood, but against Barnes, it cannot be used as a set-off, because that relates to mutual debts between plaintiff and defendant. The point is, if McNair had a set-off, a counterclaim against Barnes, it forms a plea in bar against his assignee. The conclusion of the plea is not as in the plea of set-off, and therefore he sets off said debt against a demand on the part of the plaintiff, and which of course he acknowledges to be due the plaintiff, but he pleads the demand against Barnes as a bar to Haywood's action, to whom he denies anything to be due.