The defendant Beggarly gave to Isham Gaither his bond for $173.50, dated 19 February, 1847, and payable at twelve months. On 29 July, 1847, Gaither deposited the bond with the plaintiff, and they executed an agreement in writing that it was so deposited "to make the said Turner safe for the amount said Gaither is due him, and also as his surety in all cases; and whenever said Gaither shall pay said Turner and release him as the surety of said Gaither, the above bond is to be said Gaither's, and, otherwise, to be the said Turner's. On 1 October, 1847, Gaither indorsed the bond to the plaintiff, and soon after it fell due this action of debt was brought on it, and the defendant pleaded payment and the set-off of certain sums which Gaither owed to him (Beggarly). In support of those pleas the defendant offered to give in evidences the following notes *Page 242 
made by Gaither: One dated in 1846 and payable to Beggarly one day after date; another dated 1 September, 1847, and payable to Beggarly one day after date; one payable to one Gray, 2 September, 1846, and indorsed by Gray to Beggarly, (332) 19 July, 1847. The counsel for the plaintiff objected to receiving them in evidences, but the court admitted them. Evidence was then given on the part of the defendant that, shortly after giving the bond which is sued on, the plaintiff applied to the defendant to take up certain debts which Gaither — then and during the year 1849, in the defendant's employment at wages of $26 a month — owed to the plaintiff, which the defendant refused, telling the plaintiff "the thing is nearly up," and also that, between 7 and 12 September, 1847, the defendant applied to the plaintiff to let him see the bond and the written agreement of 29 July, 1847, in his possession, and that the plaintiff then showed them to the defendant, asking him if he wished to pay the bond, and the defendant replied: "I am ready to pay according to my contract with Gaither, and it is about paid off to Gaither."
The court instructed the jury that, although the bond was assigned to the plaintiff before it was due, it was liable to all defenses by the obligor which he could set up against the obligee, provided the plaintiff had notice of those defenses at the time of the assignment, or such information as would put a prudent man upon inquiry; and, therefore, that in this case, if they believed that Turner had such information, they should allow as set-offs all the debts to the defendant up to 1 October, 1847. The counsel for the defendant was then moves the court to instruct the jury that the defendant was not entitled to claim as a set-off any of the said debts which arose to the defendant after he had notice of the deposit of his bond with the plaintiff, upon the agreement of 29 July, 1847. But the court refused, and then told the jury that the deposit and separate written transfer made no difference, whether the defendant knew of them or not, and that, up to 1 October, 1847, the plaintiff stood in Gaither's shoes, provided he had notice of the alleged (333) payments and set-offs. The jury thereon found payments for $152.29, and that, after deducting the same, a balance of $21.21 was due for principal money on the bond declared on, and assessed the damages for interest to $2. After judgment the plaintiff appealed.
Notes overdue are deemed dishonored, and one who takes them in that state is considered at this day as taking them upon the credit of his indorser, and is to stand in the place of the holders at or since its maturity. It is commonly said in such a case that the bill or note is affected in the hands of the indorsee by all the equities between the original parties. That form of expression is proper and strictly true in relation to such defenses as the maker could set up in a court of equity against the payee, for whenever the debtor, in the view of the Court of Equity, ought to be relieved from the payment of the debt, either because of some original vice in the contract or because of a counter-demand, or other sufficient reason, it is against conscience in the holder of a security of this kind to attempt to defeat the debtor of the benefit of such an equitable defense by making an assignment of it. Therefore, an assignee after maturity is, in equity, held to take the note as his assignor had it. But if the defenses of the debtor be equitable in their nature, that is, cognizable in the Court of Equity and not in a court of law, as between the original parties, the jurisdiction is not changed in respect of such defenses by the fact of the security being indorsed. It is true, the same form of expression, that an overdue note is liable after indorsement to all equities, is often used in courts of law and in books which treat of the legal rights of the assignee and debtor. But it is not, in references to the legal rights of those parties, an accurate mode of speaking, for as Chief Justice Henderson (334) said, in Haywood v. McNair, 14 N.C. 231,"The equities of the parties which attach to a contract of this kind can no more be examined in a court of law than any other equities. Therefore, defenses founded on mere equities must be made in equity, and the law takes notice only of such defenses as are of a legal nature. The meaning, then of thus speaking in a court of law is that a note transferred under dishonor is subject to the legal exceptions to its payment in the hands of the assignee to which it was liable in the hands of the payee." Accordingly, in that case, the Court declined entering into mere equities between the parties, but held the defendant entitled to the same legal defenses against the note in the hands of Haywood to which it was subject in the hands of Barnes at the time of the assignment by him to Haywood. Upon the strength of Burrough v. Moss, 10 B. and C., 558, just then reported in this country, a second action was brought by Haywood, and the questions before decided were re-examined by the Court, and the opinions before given were again affirmed. It was held that if the debtor had a right to a deduction or set-off against *Page 244 
the plaintiff, at the time of the assignment, he should, although the set-off or deduction did not attach to the particular note or bond, have the same right after the assignment, and that he might have the benefit of such right upon the general issue if sued in assumpsit or by special plea, if sued in debt on a bond; but that the defense thus set up must be one for the original debtor, if sued by the obligee at law, and not one which would be merely a ground for relief in equity. Haywood v. McNair,19 N.C. 283. The utmost extent, then, to which, at law, this doctrine, that an assignee is affected by the liabilities of his assignor, has been carried, is that he shall be thus affected in respect of such liabilities as existed at the time of the (335) assignment and constituted a demand which was then available as a defense at law. The proposition, thus stated, obviously excluded from its operation notes and bond indorsed before due. There may be a few cases of bills, perhaps, which might be admitted as exceptions, as if a bill were noted for nonacceptance, and then wrongfully indorsed by one who held it for the benefit of the drawer or the like; then the instrument carries its dishonor on its face, thought not due; but in respect to notes or bonds not at maturity, it is not seen how any defenses arising out of counter-demands between the original parties can be let in. They were not available at the time of the assignment. Indeed, in Burbridge v. Manners 3 Camp., 192, Lord Ellenborough, admitting that payment at maturity extinguished a bill or note and that it could not be reissued, declared distinctly that payment meant a payment in due course, and not in anticipation, and therefore that a subsequent assignee for value before a majority could recover on the security. For, as Mr. Justice Butler said in Brown v. Davis, 3 Term, 80, a transfer of a note before it is due carries no suspicion with it, and the assignee receives it on its intrinsic credit; and, as Mr. Chitty adds, he is not bound to inquire into circumstances existing between his assignor and any of the previous parties to the paper, as he will not be affected by them. Chitty on Bills. 14 Story Ed., 1819. It would clog in an inconvenient and dangerous manner the circulation of negotiable paper if such prepayments could affect its validity, when left in existence, with no note of the fact on it; much less can it be affected by a counter-demand of the maker or the payee — at least at law. Under what form of pleading could the defense be presented? There was clearly no payment here. It is not a set-off of (336) a debt against the indorsee, nor a set-off of a debt of the assignor, available at the time of the assignment, since at that time there could be no action by any one on the assigned *Page 245 
instrument. If there were any equities which tied up the hands of the payee from justly parting from the paper, another tribunal may gives relief against the assignee on the ground of them, if they can be brought home to him; as if he had agreed to apply these demands to the debt, then being insolvent, indorsed it with notice. But in such a case, on the other hand, a court of equity would not confine its inquiry to the effect of the legal assignment by indorsement, but would have regard to an assignment as a security or by a separate agreement in any form which constitutes a contract of assignment in that court. We do not propose, however, entering into those considerations, taking notice of them only to show that they present points peculiarly belonging to the Court of Equity and which cannot be acted on at law, without danger of doing injustice to one or both of the parties. Here the plaintiff took the bond by indorsement, at a time when the defendant could make no defense against it, and it was not questioned on the trial that he gave value for it and holds it for himself. It is impossible for juries duly to estimate the circumstances which ought to put a person on inquiry, and thus affect him with notice of a counter-demand or other equity, and the attempt to do so would often work great injustice. It is safest, therefore, to rely upon the broad distinction founded upon the time of transfer, that is, before and after the maturity of the paper — in the latter case allowing to the debtor all the defenses he could have had against the obligee if sued at law by him; but in the former, passing the paper effectually at law, according to its tenor in its face or memorandum on it, and leaving the debtor to such relief in equity as by the rules of that court affect the conscience of the assignee.