CREDIGY RECEIVABLES, INC. v. BLANCHE WHITTINGTON, Defendant

No. COA09-465

(Filed 2 March 2010)

## 1. Attorney Fees— lack of standing—absence of justiciable issue—award proper

The trial court did not err in awarding defendant attorney fees under N.C.G.S. § 6-21.5 where plaintiff did not have the right to enforce its purchased judgment against defendant. Because plaintiff did not have standing to pursue enforcement of

the judgment against defendant, and because the pleadings and judgment failed to connect defendant to the underlying debt, there was a complete absence of justiciable issues raised by plaintiff in its pleading.

**2. Attorney Fees— absence of justiciable issue—award proper**

Plaintiff's assertion that it was a *bona fide* purchaser for value of a default judgment, without notice of any defects, was irrelevant to the determination that there was a complete absence of justiciable issues raised by plaintiff in its pleading and, thus, that an award of attorney fees to defendant under N.C.G.S. § 6-21.5 was proper. Plaintiff purchased a default judgment that was non-justiciable as to defendant as a matter of law.

Appeal by plaintiff from judgment entered 4 September 2008 by Judge Timothy I. Finan in Wayne County District Court. Heard in the Court of Appeals 14 October 2009.

*Ellis & Winters, LLP, by Jeffrey M. Young, for plaintiff appellant.*

*John Robert Hooten; and White & Allen, P.A., by Matthew S. Sullivan, for defendant appellee.*

HUNTER, JR., Robert N., Judge.

In 2008, Credigy Receivables, Inc. ("Credigy") purchased and became the assignee of a default judgment against "Blanche Whittington" of 107 Courtland Place, Goldsboro, Wayne County, North Carolina. The assignment granted Credigy the right to collect on the judgment, which concerned a delinquent credit card account opened in the name "Blanche Whittington." After the purchase, Credigy initiated proceedings to collect the debt against 82-year-old Ms. Blanche Whittington of 2114 Michelle Drive, Kinston, Lenoir County, North Carolina.

The real Ms. Whittington, residing in Kinston, did not incur the debt underlying the judgment, but instead was the victim of identity theft by a Ms. Mary E. Atkinson. Ms. Atkinson appropriated Ms. Whittington's social security number in perpetrating a number of similar frauds on other creditors during the time the credit card debt was incurred.

Upon receiving a notice to claim exemptions from Credigy, Ms. Whittington retained counsel, who immediately notified Credigy's counsel of the error. Subsequently, Ms. Whittington's counsel filed a Rule 60 motion, including a motion for attorneys' fees, to set aside the judgment. The matter proceeded to hearing, and the judgment was eventually set aside as to the true Ms. Whittington by consent of the parties.

Despite this agreement, the trial court awarded Ms. Whittington $26,101.75 in attorneys' fees accumulated while defending against Credigy's enforcement efforts under N.C. Gen. Stat. § 6-21.5 (2009). Credigy appeals the attorneys' fees award and argues: (1) that it pursued a justiciable claim against Ms. Whittington in the preliminary stages of enforcement of the judgment, and (2) that the attorneys' fees were not reasonably incurred, since its enforcement efforts were suspended during an investigation of whether Ms. Whittington was, in fact, the debtor. For reasons stated herein, we affirm the trial court's award.

## I. BACKGROUND

At some point prior to 10 May 1999, Ms. Atkinson, posing as "Blanche Whittington," applied for a credit card account with Fleet Bank. On the application, Ms. Atkinson represented to Fleet Bank that: (1) her name was "Blanche Whittington"; (2) her social security number ended in 1234;[1] and (3) she lived at 107 Courtland Place, Goldsboro, Wayne County, North Carolina. The credit account became delinquent as of 10 May 1999, and Fleet Bank transferred the account to First Select Corporation ("First Select"). On 28 July 1999, First Select filed suit against Ms. Atkinson for nonpayment of the outstanding balance plus interest, $6,319.72. First Select used the name "Blanche Whittington" in the complaint heading.

On 21 August 2001, default judgment was entered in favor of First Select against a "Blanche Whittington" residing at "107 Courtland Place[,] Goldsboro, North Carolina," and the judgment was registered in Wayne County, North Carolina. The judgment award included the principal sum of $6,205.47 with 8% interest per annum, $947.96 in attorneys' fees, and the costs of the action. The Clerk of Superior Court of Wayne County entered default judgment in favor of First Select upon a showing by its attorney that service of the summons

---

1. These are fictitious numbers employed here to protect Ms. Whittington against further identity theft, but the numbers used were in fact the last four digits of Ms. Whittington's social security number.

and complaint was obtained by certified mail on 20 July 2001. The mail summons was delivered to the residence of 107 Courtland Place, and someone at the residence signed their name as "Blanche Whittington" to receive service. Prior to completing service by mail, First Select's counsel had six summons and complaints returned without service, because the Wayne County Sheriff's office could not locate any person by the name "Blanche Whittington" at 107 Courtland Place in Goldsboro.

In October 2001, First Select attempted to serve a Notice of Right to Have Exemptions Designated on "Blanche Whittington[,] 107 Courtland Place[,] Goldsboro, North Carolina." The deputy sheriff returned the notice unserved on 23 October 2001, and stated that the "Blanche Whittington" purportedly residing at 107 Courtland Place was not able to be located and that no forwarding address was available.

On 26 March 2003, First Select assigned the default judgment to Credigy for $10.00, and the assignment was registered in Wayne County. On 16 April 2003, Credigy's counsel mailed a notice of the assignment to "Blanche Whittington" at 107 Courtland Place in Goldsboro.

Credigy obtained a Notice of Right to Have Exemptions Designated for "Blanche Whittington[,] 107 Courtland Place[,] Goldsboro, North Carolina[,]" on 25 May 2007. The notice was returned by the Wayne County Sheriff's Office on 1 July 2007 with the notation: "Does not live at given address[.] Lives out of state[.]" Credigy's counsel thereafter conducted a "skip trace" search through Lexis using the social security number listed in the credit application. A "skip trace" search is a tool provided by several online search companies to help debt buyers locate missing debtors. By entering only Ms. Whittington's social security number into the appropriate Lexis search data field, Credigy's counsel acquired a new address for "Blanche Whittington": 2114 Michelle Drive, Kinston, North Carolina.

On 18 February 2008, counsel for Credigy sent a letter to Blanche Whittington of 2114 Michelle Drive, Kinston, North Carolina.[2] The letter offered Ms. Whittington the opportunity to settle the outstanding debt of $11,620.36 for a 20% discount.

---

2. The record does not disclose whether the default judgment was ever transcribed from Wayne County to Lenoir County pursuant to N.C. Gen. Stat. § 1-234 (2009).

Ms. Whittington immediately informed her counsel, who sent a letter by first class mail on 22 February 2008 to notify Credigy's counsel that an identity theft had occurred, and that Ms. Whittington did not owe the debt underlying the default judgment. The letter was properly addressed and was not returned. In a sworn statement at trial, Credigy's counsel stated that neither Credigy nor its counsel had any record of receiving the 22 February 2008 letter.

On 1 April 2008, the Sheriff of Lenoir County, North Carolina, served a Notice of Right to Have Exemptions Designated on Ms. Whittington. Ms. Whittington again informed her counsel, who sent another letter by certified mail and facsimile on 3 April 2008, denying Ms. Whittington's liability on the judgment. On 16 April 2008, Ms. Whittington sought relief from Credigy's judgment by motion under Rules 6 and 60 of the North Carolina Rules of Civil Procedure. As grounds for relief from judgment, Ms. Whittington's counsel stated that Ms. Whittington had never resided at the 107 Courtland Place address, and that Ms. Whittington had never been served with process with respect to the default judgment. The motion was accompanied by an affidavit from Ms. Whittington, where Ms. Whittington provided: (1) she had never resided outside Lenoir County, and she had resided at her Michelle Drive address since 1964; and (2) Ms. Atkinson had stolen her identity several years prior, and Ms. Whittington had spent years dealing with Ms. Atkinson's creditors. In her motion, Ms. Whittington asked the trial court for attorneys' fees.

Shortly after receiving service of Ms. Whittington's motion on 16 April 2008, one of Credigy's counsel called counsel for Ms. Whittington, and left Ms. Whittington's counsel a voicemail stating that "a mistake had been made and that the mistake should be corrected." Later that afternoon, Ms. Whittington's counsel received a call from another attorney for Credigy. The second caller also indicated that a mistake had been made, and that the Rule 60 motion to set aside the judgment should be allowed. Ms. Whittington's counsel asked Credigy's counsel to discontinue Credigy's collection efforts. Though counsel for Credigy concurred that the Notice of Right to Have Exemptions Designated and all collection efforts should be stopped, he declined to make a binding agreement to do so unless Ms. Whittington withdrew her motion for attorneys' fees. The dispute continued.

On 21 April 2008, a preliminary hearing was held on Ms. Whittington's motion to set aside the judgment. At the hearing, counsel for Credigy said that all collection efforts would be suspended as

to Ms. Whittington; however, he did not withdraw the Notice of Right to Have Exemptions Designated. Instead, Credigy's counsel asked for an extension of time in order to give his client an opportunity to investigate the facts contained in Ms. Whittington's affidavit. Another hearing was scheduled for 30 June 2008.

On 16 June 2008, Ms. Whittington's counsel filed a motion for attorneys' fees under N.C.G.S. § 6-21.5. In the motion, Ms. Whittington claimed that Credigy had pursued a non-justiciable claim against Ms. Whittington, because Ms. Whittington had never been served with process with respect to the default judgment in issue. Ms. Whittington argued that the judgment was void and unenforceable against her. The motion was thereafter accompanied by two affidavits detailing the times and hours calculating the attorneys' fees sought. Ms. Whittington's initial counsel filed one affidavit, and the other was filed by an attorney associated with initial counsel. Up until the filing of the affidavits on 30 June 2008, the total hours accrued between both counsel was 89.4 hours.

On 30 June 2008, Credigy filed a motion in opposition to Ms. Whittington's motion for relief from judgment, where Credigy moved the trial court to deny Ms. Whittington's motion for attorneys' fees. In the brief, Credigy contended that attorneys' fees were not proper, because it had no notice of a potential identity theft until 3 April 2008, and Ms. Whittington had refused to fill out an industry standard Fraud/Identity Theft Affidavit. Credigy stated that, without the affidavit, it lacked "sufficient justification" to suspend post-judgment collection efforts, and that it lacked "sufficient documentation" of "an act of fraud or identity theft." Credigy also noted that it had purchased the judgment "without prior knowledge or notice of any disputes involving the subject account, and as such, is a bona fide purchaser for value."

On 30 June 2008, the trial court conducted a hearing on Ms. Whittington's motions. Credigy's counsel informed the trial court that Credigy had concluded, after "investigation," that Ms. Whittington did not commit the acts described in the default judgment. On 16 July 2008, Credigy filed a motion in opposition to Ms. Whittington's motion for attorneys' fees under N.C.G.S. § 6-21.5. In the motion, Credigy contended again that it did not have notice of any deficiency in the judgment until 3 April 2008, and that Ms. Whittington had refused to fill out a Fraud/Identity Theft Affidavit in accordance with industry standards. Credigy averred in particular that Ms. Whittington "knew or with the exercise of due care should have known through

the course of her efforts to correct her credit report of the existence of the judgment involving the subject account prior to her receipt of [Credigy's] [d]emand [l]etter dated February 18, 2008."

On 4 September 2008, the trial court filed an order granting Ms. Whittington's motions to set aside the judgment and to award attorneys' fees. From the 4 September 2008 order, Credigy appeals.

## II. ANALYSIS

[1] On appeal, Credigy argues the imposition of attorneys' fees is unjustified because: (1) the pleadings and the default judgment were presumptively valid, and presented a justiciable issue as to Ms. Whittington's identity and indebtedness, and (2) Credigy suspended its enforcement efforts upon receiving competent evidence that Ms. Whittington was not liable on the judgment. We do not agree.

### A. Standard of Review

When reviewing an award of attorneys' fees under section 6-21.5, this Court must review all relevant pleadings and documents of a case in order to determine if either: (1) the pleadings contain "a complete absence of a justiciable issue of either law or fact," N.C.G.S. § 6-21.5; or (2) "whether the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." *Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 258, 400 S.E.2d 435, 438 (1991). *See Lincoln v. Bueche*, 166 N.C. App. 150, 153-54, 601 S.E.2d 237, 241 (2004) (this Court must review "all relevant pleadings and documents" to determine if either of the above requirements are satisfied).

### B. Assignment

It has long been the law in North Carolina that "the assignee stands absolutely in the place of his assignor, and it is . . . as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties." *Smith v. Brittain*, 38 N.C. 347, 354, 1844 N.C. LEXIS 157, at *13 (1844); *see Turner v. Beggarly*, 33 N.C. 331, 334-35, 1850 N.C. LEXIS 66, at *6-7 (1850) ("[A]n assignee is affected by the liabilities of his assignor, . . . [and] he shall be thus affected in respect of such liabilities, as existed at the time of the assignment and constituted a demand which was then available as a defense at law."). In the context of negotiable instruments, this concept is codified in N.C. Gen. Stat. § 25-3-203 (2009),

which grants the transferee of an instrument "any right of the transferor to enforce the instrument."

This State's Supreme Court addressed the doctrine of assignment with respect to purchased judgments in *Jones v. T. S. Franklin Estate*, 209 N.C. 585, 183 S.E. 732 (1935).[3] In that case, Jones, an attorney, purchased for value a judgment prosecuted by the North Carolina Corporation Commission (the "Commission") against T. S. Franklin Estate. *Franklin Estate*, 209 N.C. at 585, 183 S.E. at 732. The purchased judgment entitled the Commission to levy a stock assessment against T. S. Franklin Estate after the failure of the Central Bank and Trust Company of Asheville, North Carolina. *Id.* After levying on twenty shares of stock, judgment was entered in favor of the Commission for two thousand dollars. *Id.* Thereafter, Jones purchased the judgment, and the assignment was docketed in November 1931. *Id.*

Both during the initial prosecution and after the assignment to Jones, Julian Price was the executor of T. S. Franklin Estate. *Id.* About three and a half years after the assignment, Jones filed a motion in superior court in order to make Price a party "individually and as trustee" to the purchased cause of action. *Id.* at 586, 183 S.E. at 732. In the motion, Jones alleged that Price was the "actual owner" of the stock that was levied by the Commission, even though the stock at issue "stood on the books of the [failed] bank in the name of . . . T. S. Franklin Estate[.]" *Id.* The trial court denied Jones's motion, and Jones appealed to the North Carolina Supreme Court. *Id.*

In affirming the trial court's decision, the *Franklin Estate* Court concisely presented the relevant question:

> Does the simple assignment of a judgment on the judgment docket entitle the assignee in a subsequent proceeding to bring in others, who were not parties to the original action, and subject them to liability for the payment of the judgment which had been rendered against the original debtor only?

*Id.* The Court concluded that the doctrine of assignment does not allow such an action against third parties who are unnamed in the judgment, and further observed:

---

3. We apply the common law instead of the Uniform Commercial Code in this case, because the default judgment in issue concerned an unsecured credit account, and the judgment, by itself, did not serve as collateral. N.C. Gen. Stat. § 25-9-109 (2009). The judgment is also not a negotiable instrument. N.C. Gen. Stat. § 25-3-104 (2009) (negotiable instruments must contain either "an unconditional promise or order to pay" by the issuer).

The mere assignment of a judgment transfers to the assignee all the rights and remedies of the assignor with respect to the judgment and carries with it the right to enforce the judgment by a resort to every legal or equitable remedy available to the assignor, but, unless expressly provided for, this does not confer upon the assignee the additional right thereafter to subject to liability on the judgment others who were not parties to the original action, though the assignor, the original plaintiff, might have had a cause of action against them but [forbore] to pursue it.

*Id.*

Here, when Credigy purchased the default judgment in issue, it acquired a right to collect on the underlying debt only to the extent of its predecessors in interest: First Select and Fleet Bank. *Id.*; *see Smith*, 38 N.C. at 354, 1844 N.C. LEXIS 157, at *13. Credigy has admitted that someone other than Ms. Whittington signed the contract with Fleet Bank that was later transferred to First Select. First Select, as transferee of Fleet Bank's interest, prosecuted its rights to the outstanding obligation under the contract, and obtained a valid judgment against the party incurring the debt under the credit card agreement, Ms. Atkinson. It was under these circumstances that Credigy obtained its rights as assignee of the default judgment, and accordingly, these facts outline the boundaries by which its collection efforts are subject. *See Turner*, 33 N.C. at 334-35, 1850 N.C. LEXIS 66, at *6-7.

Within these strictures, it is apparent that Credigy never had the right to enforce its purchased judgment against Ms. Whittington, because it stepped directly into the shoes of Fleet Bank, who never had a claim against Ms. Whittington for the underlying debt. Credigy has conceded that Ms. Whittington did not open the credit card account with Fleet Bank, and that she was never made a party to the judgment through service of process. Thus, Credigy, through operation of law, did not purchase the right to seek payment of the judgment from Ms. Whittington, and it had no right under the holding of *Franklin Estate* to make her part of any subsequent proceedings. *Franklin Estate*, 209 N.C. at 586, 183 S.E. at 732.

Credigy argued at the June hearing that the delinquent account had always been tracked by three things: (1) the name "Blanche Whittington," (2) the address at 107 Courtland Place, and (3) the social security number ending in 1234. This information, while helpful in potentially locating the real debtor, did not expand Credigy's rights as an assignee stepping into the shoes of its predecessors in

interest. Absent a right to involve Ms. Whittington in the enforcement of the judgment, we now turn to whether attorneys' fees were proper.

### C. Justiciability and Attorneys' Fees

Under N.C.G.S. § 6-21.5, attorneys' fees may be awarded by the trial court in its discretion, where "upon motion of the prevailing party, . . . the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C.G.S. § 6-21.5. In North Carolina, a justiciable issue is one that is " 'real and present as opposed to imagined or fanciful.' " *In re Williamson*, 91 N.C. App. 668, 682, 373 S.E.2d 317, 325 (1988) (quoting *Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 326, 344 S.E.2d 555, 575 (1986)).

"In order to find complete absence of a justiciable issue it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss." *K & K Development Corp. v. Columbia Banking Fed. Savings & Loan*, 96 N.C. App. 474, 479, 386 S.E.2d 226, 229 (1989). Under this deferential review of the pleadings, a plaintiff must either: (1) "reasonably have been aware, at the time the complaint was filed, that the pleading contained no justiciable issue"; or (2) be found to have "persisted in litigating the case after the point where [he] should reasonably have become aware that pleading [he] filed no longer contained a justiciable issue." *Brooks v. Giesey*, 334 N.C. 303, 309, 432 S.E.2d 339, 342 (1993) (quotation marks and citations omitted). Section 6-21.5 was enacted "to discourage frivolous legal action and that purpose may not be circumvented by limiting the statute's application to the initial pleadings. Frivolous action in a lawsuit can occur at any stage of the proceeding and whenever it occurs is subject to the legislative ban." *Short v. Bryant*, 97 N.C. App. 327, 329, 388 S.E.2d 205, 206 (1990).

Our conclusion that Credigy did not purchase the right to enforce its judgment against Ms. Whittington pursuant to *Franklin Estate*, goes to the heart of a justiciable, civil cause of action: standing.

"The gist of standing is whether there is a justiciable controversy being litigated among adverse parties with substantial interest affected so as to bring forth a clear articulation of the issues before the court." *Texfi Industries, Inc. v. City of Fayetteville*, 44 N.C. App. 268, 269-70, 261 S.E.2d 21, 23 (1979), *aff'd*, 301 N.C. 1, 269 S.E.2d 142 (1980). The burden is on the plaintiff to demonstrate that the require-

ment of standing is satisfied. *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002). In civil cases, standing requires a plaintiff to prove three elements:

> "(1) 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992)).

By purchasing the default judgment from First Select, Credigy stepped not only into the shoes of First Select, but also those of the contracting party, Fleet Bank. *Smith*, 38 N.C. at 354, 1844 N.C. LEXIS 157, at *13; *Franklin Estate*, 209 N.C. at 586, 183 S.E. at 732. Credigy was therefore subject to "any setoff or other defense, existing at the time of, or before notice of, the assignment[.]" N.C. Gen. Stat. § 1-57 (2009); *see Trust Co. v. Williams*, 201 N.C. 464, 466, 160 S.E. 484, 485 (1931) (Assignments are "without prejudice to any setoff or other defense existing at the time of, or before notice of the assignment."). The defense relevant to the case *sub judice* is Credigy's lack of standing against Ms. Whittington.

Since Fleet Bank did not contract with Ms. Whittington, Credigy, as an assignee, cannot show that it suffered an "injury in fact" under the first element, because no legally protected contractual interest was purchased as to Ms. Whittington. *Beachcomber Properties, L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 824, 611 S.E.2d 191, 194 (2005) (plaintiff held to have no injury in fact, and consequently no standing, where it had no enforceable contract right against the defendant). Moreover, Credigy's injury is also not "fairly traceable" to Ms. Whittington under the second element, because Ms. Whittington did not default on the credit card account underlying the default judgment. The failure of these two elements is sufficient to show that Credigy did not have standing to enforce the judgment against Ms. Whittington, and any action that Credigy thought it had against Ms. Whittington was "imagined or fanciful" as a matter of law. *In re Williamson*, 91 N.C. App. at 682, 373 S.E.2d at 325; *see Short*, 97 N.C. App. at 329, 388 S.E.2d at 206 (non-justiciable claims can arise "at any stage of the proceeding").

CREDIGY RECEIVABLES, INC. v. WHITTINGTON

[202 N.C. App. 646 (2010)]

As to the requirement under section 6-21.5 that Credigy must have been aware of its lack of standing, the law of assignment imputes Credigy with the knowledge that it lacked standing at the time it attempted to enforce the judgment. *Smith*, 38 N.C. at 354, 1844 N.C. LEXIS 157, at *13; *Turner*, 33 N.C. at 334-35, 1850 N.C. LEXIS 66, at *6-7; *Pickett v. Fulford*, 211 N.C. 160, 164, 189 S.E. 488, 490 (1937) (an assignee takes with an instrument "constructive notice of antecedent equities"); *cf.* 1 Samuel Williston, *A Treatise on the Law of Contracts* § 74:56, at 607 (Richard A. Lord ed., 4th ed. 1990) (When transacting under section 9-404 of the UCC, "the assignee steps into . . . the assignor's shoes absolutely, and, if the shoes are dirty, then that dirt sullies the assignee no less than it did the assignor."). Fleet Bank, as the creditor, should have been aware that it would have standing against no one other than the signing party in the case of a default on the credit account. Upon transferring its rights promptly to First Select at the first signs of collection trouble, this knowledge of standing was also transferred and was made part of the default judgment by operation of law, because it was First Select's burden to show standing at the time it filed the complaint. *Am. Woodland Indus., Inc.*, 155 N.C. App. at 627, 574 S.E.2d at 57. When Credigy purchased the judgment, it was "as if [Fleet Bank's] contract had been originally made with [Credigy], upon precisely the same terms[.]" *Smith*, 38 N.C. at 354, 1844 N.C. LEXIS 157, at *13. Accordingly, Credigy had constructive notice through the principles of assignment that the judgment did not present a justiciable issue as to Ms. Whittington.

However, Credigy's imputed knowledge aside, Credigy also should have recognized that the pleadings on their face, even under an "indulgent" review, fail to present a colorable claim that Ms. Whittington was the debtor.

On 28 July 1999, First Select filed a complaint seeking to enforce its rights as to Ms. Atkinson's delinquent credit card account. The complaint alleges in relevant part:

2. Upon information and belief, the defendant ["Blanche Whittington"] is a resident of Wayne County, North Carolina.

3. The attached account agreement is a true and accurate copy of the terms and conditions of the written account agreement between the parties.

4. The defendant is in default under the terms of that account agreement, in that said defendant has failed to make the payments due thereunder.

The complaint contains no social security number, and lists no address for the "Blanche Whittington" named as the defendant. The account agreement attached to the complaint, as shown in the record in this appeal, contains only the terms and conditions of the credit card account upon being transferred to First Select, and does not mention the identity of the debtor. The complaint makes no mention of a credit card application, nor does it state the contents of such application. The county of residence mentioned for the debtor, "Blanche Whittington," has never been the county of residence for Ms. Whittington. The only link to Ms. Whittington and the "Blanche Whittington" named in the complaint's heading is the bare mention of the same name.

First Select filed a motion for default judgment dated 20 August 2001 based on this complaint. The motion was accompanied by two affidavits: one from Credigy's counsel stating that service of process was obtained through certified mail under Rule 4(j)(1), and the other from First Select verifying the amount due under the credit card agreement. Neither affidavit contains an address, social security number, or any other information identifying the debtor except for using the name "Blanche Whittington" and listing the credit card account number.

On the default judgment itself, the address at 107 Courtland Place appears below the name "Blanche Whittington" in the judgment heading. No other indication of the debtor's identity is provided. Though Credigy argued at the June hearing that the same social security number was traced throughout the history of the account, nothing in the record shows that this piece of information was ever made part of the pleadings or judgment.

Prior to enforcing their judgment, it was Credigy's burden to establish standing against Ms. Whittington. *See Am. Woodland Indus., Inc.*, 155 N.C. App. at 627, 574 S.E.2d at 57. As assignee, Credigy purchased the inability of these pleadings and the judgment to implicate the real Ms. Whittington. *Franklin Estate*, 209 N.C. at 586, 183 S.E. at 732; *Smith*, 38 N.C. at 354, 1844 N.C. LEXIS 157, at *13; *Turner*, 33 N.C. at 334-35, 1850 N.C. LEXIS 66, at *6-7. Since Credigy did not have standing to pursue enforcement of the judgment against Ms. Whittington, and because the lack of allegations in the pleadings and judgment fail to connect the real Ms. Whittington to the underlying debt, Credigy should have been aware that no justiciable claim would lie against anyone other than the only person clearly identified on the judgment: "Blanche Whittington" residing at 107

Courtland Place in Wayne County. Thus, the award of attorneys' fees under section 6-21.5 was proper. These assignments of error are overruled.

### D. Credigy's Remaining Arguments

**[2]** Credigy has maintained at trial and on appeal that it was a bona fide purchaser of the default judgment without notice of any defects, and it contends that once it received competent evidence of an identity theft, it ceased to pursue its claim in a timely fashion. However, it is through simple operation of law that Credigy purchased a default judgment that was non-justiciable as to Ms. Whittington. Therefore, whether Credigy is a purchaser for value is not relevant to our determination here. As to notice, Credigy assumed the notice that Fleet Bank and First Select possessed upon Credigy's purchase of the judgment, *see Pickett*, 211 N.C. at 164, 189 S.E. at 490, and Credigy should have known from an examination of the pleadings that the default judgment was not enforceable against Ms. Whittington. We stress again that Credigy must assume the posture of its predecessors in interest, and be subject to the same liability and defenses at law that existed at the time it became the assignee of the judgment. *Turner*, 33 N.C. at 334-35, 1850 N.C. LEXIS 66, at *6-7; *see also Overton v. Tarkington*, 249 N.C. 340, 106 S.E.2d 717 (1959) (debtor able to bring claim against assignee for usurious charges alleged to be part of the assigned contract). The circumstance that the judgment was fatally flawed by Ms. Atkinson's fraud does not make the judgment justiciable as to Ms. Whittington, and does not change the context in which Credigy and its predecessors in interest should have known that no cause of action has ever existed against Ms. Whittington.

Credigy also makes several arguments in its brief that the trial court's findings are not supported by competent evidence. However, because Credigy has admitted that Ms. Whittington was not the debtor, our analysis shows that the trial court properly concluded as a matter of law that no "justiciable issue of law or fact" has ever been raised against Ms. Whittington.

### III. CONCLUSION

Credigy lacked standing to enforce the default judgment against Ms. Whittington, and the pleadings supporting Credigy's default judgment present no justiciable issue. Credigy reasonably should have been aware that it was pursuing a non-justiciable claim, and as such, attorneys' fees were properly granted under N.C.G.S. § 6-21.5. Accordingly, the order of the trial court is

Affirmed.

Judges ELMORE and STEELMAN concur.