GEORGIA RAILROAD BANK & TRUST COMPANY v. JOSEPH M. EWAYS

No. 7929SC570

(Filed 6 May 1980)

**Constitutional Law § 24.7; Process § 9.1— nonresident individual—minimum contacts—ownership of property in N. C.—no personal jurisdiction**

     The application of either G.S. 1-75.4(1)(d) or G.S. 1-75.8(5) to assert jurisdiction over the Pennsylvania defendant or his N. C. property would offend traditional notions of fair play and substantial justice, since plaintiff, a Georgia banking corporation, sought to enforce the obligation of defendant, a Pennsylvania resident, upon his guaranty of payment of a debt of an S. C. corporation of which defendant was president; the debt was incurred to finance the development of real property located in S. C.; no portion of the contract was negotiated or executed in N. C. and the laws of another state would govern its interpretation; defendant's only contacts with N. C. were his execution of deeds to property in the State and the institution of suit to regain his title thereto; and defendant's mere ownership of property in N. C. was insufficient to establish the minimum contacts necessary to satisfy the requirements of due process, since the property in question was in no way affected by the contract of guaranty which plaintiff sought to enforce.

APPEAL by plaintiff from *Ferrell, Judge.* Order entered 24 April 1979. Heard in the Court of Appeals 17 January 1980.

Plaintiff, a Georgia banking corporation, filed this action in superior court in Rutherford County against defendant, a citizen and resident of Pennsylvania. Plaintiff alleged in its complaint that on or about 20 May 1977 plaintiff and Wildwood, Inc., a South Carolina Corporation, entered into an agreement whereby plaintiff agreed to lend up to $500,000.00 to Wildwood, Inc. At the same time, defendant, the president of Wildwood, Inc., executed a written guaranty as part of that agreement, personally guaranteeing the obligation of Wildwood, Inc. Allegedly in reliance upon that guaranty, plaintiff bank loaned funds to Wildwood, Inc. Thereafter, Wildwood, Inc. defaulted on its loan payments and refused to pay, and plaintiff bank made demand upon the defendant to pay according to his guaranty agreement, which defendant refused to do. Plaintiff bank prayed for judgment in the amount of $486,441.51 plus interest, that sum being the amount due and payable on Wildwood, Inc.'s debt to plaintiff.

Prior to the filing of the complaint, plaintiff sought an order of attachment against the property of the defendant in North

Carolina. Order of attachment was issued by the assistant clerk of superior court in Rutherford County on 15 August 1978. Thereafter, the sheriff of Rutherford County levied on certain real property owned by defendant and located in Rutherford County.

Defendant, through counsel, made special appearance and moved the court, pursuant to G.S. 1A-1, Rule 12(b)(2), to dismiss the action on the grounds that the court lacked personal jurisdiction over him, for the reason that the cause of action, if any, arose outside of North Carolina, that the realty which plaintiff sought to attach bore no relationship to the subject matter of the action, and that defendant lacked the minimum contacts with the State of North Carolina necessary to support the exercise of jurisdiction.

A hearing on the motion was held on 17 April 1979. The trial court found that the action was to enforce a guaranty agreement by which defendant personally guaranteed payment of the loan to Wildwood, Inc. and that the loan documents disclosed on their face that they were executed for the purpose of acquiring funds to develop real estate located in South Carolina. Concluding that the court lacked jurisdiction over the person or property of the defendant, the court granted defendant's motion to dismiss. From this order plaintiff appealed.

*A. Clyde Tomblin for plaintiff appellant.*

*C. Frank Goldsmith, Jr. for defendant appellee.*

PARKER, Judge.

Plaintiff contends on this appeal that the trial court erred in failing to find sufficient facts to support the dismissal of this case. G.S. 1A-1, Rule 52(a)(2) provides that findings of fact and conclusions of law are necessary on decisions of any motion "only when requested by a party and as provided by Rule 41(b)." The record reveals no such request by either party. In fact, the trial judge did file an Opinion and Memorandum of Decision in this case in which he made factual findings upon which he concluded as a matter of law that the court lacked jurisdiction over the person or property of the defendant. The facts found, which were essentially undisputed at the hearing, adequately reflect the material evidence presented at the hearing. Thus, the principal question

presented by this appeal is whether, on the basis of the essential-
ly undisputed facts, the trial court erred in granting defendant's
motion to dismiss under G.S. 1A-1, Rule 12(b)(2), on the grounds
that jurisdiction over the person of the defendant was lacking.

In *Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629
(1977), our Supreme Court adopted a two-step analysis to be used
in determining whether a trial court has acquired jurisdiction
over the person of a nonresident defendant. The first step is to
determine whether the statutes of North Carolina permit the
courts of this jurisdiction to entertain the action against the
defendant. If so, the next step is to determine whether the exer-
cise of this power by the North Carolina courts violates due pro-
cess of law. G.S. 1-75.4(1)(d) provides that a court has jurisdiction
over a person served in an action pursuant to Rule 4(j) of the
Rules of Civil Procedure as follows:

> (1) Local Presence or Status.—In any action, whether
> the claim arises within or without this State, in which a claim
> is asserted against a party who when service of process is
> made upon such party:

> *     *     *

> d. Is engaged in substantial activity within this State,
> whether such activity is wholly interstate, intrastate, or
> otherwise.

The legislative intent in the enactment of G.S. 1-75.4(1)(d) was to
extend to the North Carolina courts the full jurisdictional powers
permissible under federal due process. *Dillon v. Funding Corp.*,
*supra.* Similarly, the effect of G.S. 1-75.8(5) is to permit the exer-
cise of *quasi in rem* jurisdiction over the property interest of a
defendant who has been served with process pursuant to Rule
4(k) of the Rules of Civil Procedure in any action where constitu-
tionally permitted. There is no question in this case that the
Superior Court in Rutherford County had jurisdiction of the sub-
ject matter or that process was properly served under Rule 4.
Thus, as applied in the present case, the two-step analysis re-
quired by *Dillon, supra,* becomes limited to the question of
whether the assertion of jurisdiction over the person of the Penn-
sylvania defendant or over his interest in North Carolina proper-
ty violates the principles of due process established by the U.S.

Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed. 2d 683 (1977). That principle, applicable to the exercise of both personal and *quasi in rem* jurisdiction, is well established:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.

Whether minimum contacts exist is not to be determined by the application of per se rules; rather, their presence depends upon the particular facts of each case, with particular scrutiny being given to the quality and the nature of defendant's contacts with the State of North Carolina. *Buying Group, Inc. v. Coleman,* 296 N.C. 510, 251 S.E. 2d 610 (1979). In each case it is essential "that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed. 2d 1283, 1298 (1958); *applied in Chadbourn, Inc. v. Katz,* 285 N.C. 700, 208 S.E. 2d 676 (1974). Other factors to be considered are: (i) any legitimate interest the forum state has in protecting its residents with respect to the activities and contacts of the defendant; (ii) an estimate of the inconveniences to the defendant in being forced to defend a suit away from his home; (iii) the location of crucial witnesses and material evidence; and (iv) the existence of a contract which has a substantial connection with the forum state. *Byham v. House Corp.,* 265 N.C. 50, 143 S.E. 2d 225 (1965).

Plaintiff contends in effect that the exercise of jurisdiction here does not violate due process because defendant has had contacts with North Carolina which evidence that he has availed himself of the laws and benefits of this state. Applying the above stated principles of law to the facts presented, we conclude that the application of either G.S. 1-75.4(1)(d) or G.S. 1-75.8(5) to assert jurisdiction over the Pennsylvania defendant or his North Carolina property does offend traditional notions of fair play and

substantial justice. Plaintiff, a Georgia banking corporation, seeks to enforce the obligation of defendant, a Pennsylvania resident, upon his guaranty of payment of a debt of a South Carolina. corporation of which defendant was president. The debt was incurred to finance the development of real property located in South Carolina. Clearly, the material witnesses and relevant evidence necessary to establish plaintiff's right to recover have no connection with this State. No portion of the contract was negotiated or executed in North Carolina, and the laws of another state would govern its interpretation. Plaintiff bank, a nonresident itself, has not demonstrated that this State has any interest in encouraging the litigation of this suit within its borders.

As to the evidence presented by plaintiff bank at the hearing on defendant's motion to dismiss concerning defendant's contacts with this State, plaintiff's exhibits showed only that defendant owns a substantial amount of real property in Rutherford County and McDowell County. Between 1974 and 1978, defendant and his wife executed several deeds to the North Carolina property which were duly recorded in both counties in this state. In May 1977 defendant brought an action against certain Panamanian defendants in the Superior Court in Rutherford County seeking to rescind a contract of sale for the real property and to have certain deeds conveying his North Carolina property to the Panamanian defendants set aside. Upon motion by the foreign defendants in that action, that case was removed to the United States District Court for the Western District of North Carolina, the litigation ultimately resulting in the entry of judgment declaring the deeds executed null and void and revesting title in Joseph Eways, the defendant herein. Apart from the execution of deeds to the property and the institution of suit to regain his title thereto, defendant has apparently had no other contacts with the State of North Carolina. Although plaintiff contends that these activities evidence that defendant has availed himself of all of the rights and privileges of a citizen of North Carolina by conveying land and by invoking the jurisdiction of its courts, we cannot agree that such activities constitute the requisite "minimum contacts" either for the exercise of *in personam* jurisdiction or *quasi in rem* jurisdiction in this particular suit. This is not a case such as that presented in *Dillon v. Funding Corp., supra,* in which the defendant is a foreign corporation which has purposefully initiated con-

tacts in North Carolina in an attempt to solicit new business, and in which hardship would be imposed in requiring the plaintiff to litigate elsewhere. In fact, the record shows that at the time this suit was filed, a substantially similar action was pending in South Carolina. Neither is it a case such as that presented in *Hankins v. Somers*, 39 N.C. App. 617, 251 S.E. 2d 640, *cert. denied.* 297 N.C. 300, 254 S.E. 2d 920 (1979), in which the individual nonresident defendants were engaged in a regular business of selling products in the ordinary course of trade in this state. We note that each conveyance by defendant involved a transfer of title to the same real property, thus negating any inference that he was engaged systematically in the business of conveying parcels of real property in this state. Neither is there any showing upon the record of purposeful development of the property for business or other use.

The assertion of jurisdiction, if appropriate at all, then, must rest solely upon defendant's ownership of real property in this state. In *Shaffer v. Heitner, supra,* the U.S. Supreme Court held that the mere ownership of property in the forum state is insufficient to establish the "minimum contacts" necessary to satisfy the requirements of due process. The Court stated:

> This argument, of course, does not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State.

433 U.S. at 207-208, 97 S.Ct. at 2581, 53 L.Ed. 2d at 700.

Although plaintiff bank contends that the property is substantially related to the controversy over defendant's guaran-

ty agreement, the facts do not disclose that any such relationship exists. Plaintiff did obtain an order of attachment against defendant's real property prior to filing this suit. The attachment proceeding in itself, however, did not establish any relationship between the property and the underlying controversy, *see, Balcon, Inc. v. Sadler*, 36 N.C. App. 322, 244 S.E. 2d 164 (1978), and an examination of the contract of guaranty discloses that it did not purport to affect either possession or title to defendant's North Carolina property in any manner. At most it provided a means by which plaintiff could recover judgment against defendant for its breach in a court having jurisdiction over defendant's person. Having obtained an adjudication that defendant is its debtor, plaintiff would then be free to invoke the jurisdiction of the North Carolina courts to entertain an action on the judgment in order to reach defendant's real property located in this state. At present, however, defendant's connection with this state is too attenuated to justify imposing upon him the "burden and inconvenience" of defending a suit in North Carolina to determine the validity of the guaranty agreement and the existence of an enforceable debt. *See Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed. 2d 132 (1978). Thus, the trial court properly granted defendant's motion to dismiss, and the order appealed from is

Affirmed.

Judges ARNOLD and WEBB concur.