GARRY LEE SKINNER, AND WIFE JUDY COOPER SKINNER, INDIVIDUALLY AND ON BEHALF OF OTHER SIMILARLY SITUATED INDIVIDUALS, PLAINTIFFS V. PREFERRED CREDIT, ALSO KNOWN AS PREFERRED CREDIT CORPORATION, ALSO KNOWN AS PREFERRED MORTGAGE COMPANY, ALSO KNOWN AS T.A.R. PREFERRED MORTGAGE CORPORATION; US BANK N.A.; US BANK NA, ND; IMPERIAL CREDIT INDUSTRIES, INC; ICIFC SECURED ASSETS CORPORATION 1997-1; MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1997-1; ICIFC SECURED ASSETS CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1997-2; ICIFC SECURED ASSETS CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1997-3; EMPIRE FUNDING HOME LOAN OWNER TRUST 1998-1; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORPORATION; CS FIRST BOSTON MORTGAGE SECURITIES CORPORATION PREFERRED MORTGAGE ASSET-BACKED CERTIFICATES, SERIES 1996-2; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORPORATION PREFERRED CREDIT ASSET-BACKED CERTIFICATES, SERIES 1997-1; BANKERS TRUST COMPANY; GMAC-RESIDENTIAL FUNDING CORPORATION; LIFE BANK; LIFE FINANCIAL HOME LOAN OWNER TRUST 1997-3; UNITED MORTGAGE C.B., LLC; BANC ONE FINANCIAL SERVICES; IMH ASSETS CORP. COLLATERALIZED ASSET-BACKED BONDS SERIES 1999-1; AND WILMINGTON TRUST COMPANY, DEFENDANTS

No. COA04-1450

(Filed 16 August 2005)

**1. Jurisdiction— long-arm—trust holding mortgage**

Long-arm jurisdiction was not extended to defendant Trust 1997-1 in an action for usury and unfair trade practices in connection with a mortgage, and plaintiff's complaint was properly

dismissed. Defendant, which was assigned the loan after the closing, is a New York common law trust which receives and distributes income from mortgages to its certificate holders. It has back offices in New York and California but no employees; and its mortgage notes are serviced by an independent contractor in California. It had no connection with the origination of this loan and did not directly collect or direct the collection of the payments. The only connection defendant has to North Carolina is that less than three percent of its mortgage notes are secured by North Carolina real property. N.C.G.S. §§ 1-75.4(1)(d), 1-75.4(5)(d), 1-75.4(6)(b).

**2. Statutes of Limitation and Repose— usury and unfair trade practices—accrual at closing**

In an action decided on other grounds, the trial court did not err by dismissing claims for usury and unfair trade practices arising from a mortgage for expiration of the statute of limitations. The statute of limitations for usury is two years and for unfair trade practices four years, with accrual on closing date. Plaintiffs' complaint was filed over four years from the closing date. N.C.G.S. § 1-52(2), (3), N.C.G.S. § 75-16.2.

**3. Unfair Trade Practices— subsequent purchaser of mortgage note**

It has been held that a subsequent purchaser of a mortgage note who did not participate in alleged improprieties during the execution of the mortgage is not liable under N.C.G.S. § 75-1.1.

Judge BRYANT dissenting.

Appeal by plaintiffs from order entered 9 June 2004 by Judge Henry W. Hight, Jr., in Durham County Superior Court. Heard in the Court of Appeals 15 June 2005.

*Shipman Gore Mason & Wright, LLP, by Gary K. Shipman and William G. Wright, for plaintiffs-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Hada V. Haulsee and Ronald R. Davis; Leslie A. Greathouse, Santa Ana, California, pro hac vice, for defendants-appellees Preferred Credit Trust 1997-1 and Bankers Trust Company.*

TYSON, Judge.

Garry Lee Skinner and Judy Cooper Skinner ("Skinners"), as individuals and on behalf of all other individuals similarly situated (collectively, "plaintiffs"), appeal an order dismissing plaintiffs' complaint against Preferred Credit Trust 1997-1 ("Trust 1997-1") and Bankers Trust Company (collectively, "defendants") under Rule 12(b)(1), Rule (2), and Rule (6) of the North Carolina Rules of Civil Procedure. We affirm.

## I. Background

The Skinners obtained a second mortgage loan from defendant Preferred Credit on 22 January 1997. The loan was secured by a lien on their residential real property. After the closing date, the loan was assigned to Trust 1997-1. Trust 1997-1 holds mortgage loans, receives income from the mortgage loans, and distributes that income to holders of its certificates.

The Skinners allege defendant Preferred Credit charged excessive loan origination fees and interest rates for the loan in violation of North Carolina's usury law. Plaintiffs filed a class action complaint on 3 December 2001 against multiple defendants asserting violations of North Carolina's Usury Statutes and Unfair and Deceptive Trade Practices Act.

On 12 May 2003, the Chief Justice of the North Carolina Supreme Court designated this case as "exceptional" and assigned Judge Hight to hold sessions. Defendants' motions to dismiss under Rule 12(b)(1), Rule (2), and Rule (6) were heard by Judge Hight. The trial court reviewed the pleadings, read briefs submitted by plaintiffs and defendants, and heard statements and arguments in open court by both plaintiffs and defendants.

On 9 June 2004, the trial court entered its order which determined: (1) plaintiffs voluntarily dismissed claims against defendants Credit Suisse First Boston Mortgage Securities Corporation, Imperial Credit Industries, Inc., Banc One Financial Services, Life Bank, Life Financial Home Loan Owner Trust 1997-3, Wilmington Trust Company, and GMAC-Residential Funding Corporation; (2) plaintiffs voluntarily dismissed all claims against defendant U.S. Bank, N.A., ND. with prejudice; (3) plaintiffs conceded lack of standing against defendants US Bank N.A., Empire Funding Home Loan Owner Trust 1998-1, ICIFC Secured Assets Corporation Mortgage Pass-Through Certificates, Series 1997-1, ICIFC Secured Assets

Corporation Mortgage Pass-Through Certificates, Series 1997-2, ICIFC Secured Assets Corporation Mortgage Pass-Through Certificates, Series 1997-3, Preferred Mortgage Trust 1996-2, United Mortgage C.B., LLC, and IMH Assets Corp. Collateralized Asset-Backed Bonds Series 1999-1; (4) plaintiffs lack personal jurisdiction over IMPAC Mortgage Holdings, Inc., IMPAC Secured Assets Corporation, IMPAC Secured Assets CMN Trust Series 1998-1 Collateralized Asset-Backed Notes, Series 1998-1, and Trust 1997-1; (5) plaintiffs lack standing to assert claims against defendants IMPAC Funding Corporation, IMPAC Mortgage Holdings, Inc., IMPAC Secured Assets Corporation, Bankers Trust Company of California, NA, and Bankers Trust Company; and (6) plaintiffs' complaint fails to state any claim upon which relief may be granted against any of defendants. Plaintiffs appeal.

## II. Issues

The issues on appeal are whether: (1) plaintiffs have personal jurisdiction over Trust 1997-1; and (2) the applicable statute of limitations periods have expired concerning plaintiffs' claims against defendants for violations of N.C. Gen. Stat. § 24-10 and N.C. Gen. Stat. § 75-1.1.

## III. Parties Before the Court

After filing its notice of appeal, plaintiffs filed with this Court a motion to dismiss its appeal with respect to: (1) IMPAC Funding Corporation; (2) IMPAC Mortgage Holdings, Inc.; (3) IMPAC Secured Assets Corporation; (4) IMPAC Secured Assets CMN Trust Series 1998-1 Collateralized Asset-Backed Notes, Series 1998-1; and (5) Bankers Trust Company of California, N.A. We allowed this motion pursuant to Rule 37 of the North Carolina Rules of Appellate Procedure. N.C.R. App. P. 37 (2004). The sole remaining defendants are Trust 1997-1 and its trustee, Bankers Trust Company.

## IV. Personal Jurisdiction

[1] Plaintiffs assert the trial court erred in determining they lacked personal jurisdiction over Trust 1997-1. We disagree.

### A. Standard of Review

"The standard of review of an order determining jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Better Business Forms, Inc. v.*

*Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995). "If presumed findings of fact are supported by competent evidence, they are conclusive on appeal despite evidence to the contrary." *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986).

A court must engage in a two-part inquiry to determine whether personal jurisdiction over a non-resident defendant is properly asserted. *Better Business Forms, Inc.*, 120 N.C. App. at 500, 462 S.E.2d at 833. First, the court must determine whether North Carolina's 'long-arm' statute authorizes jurisdiction over the defendant. N.C. Gen. Stat. § 1-75.4 (2003). If so, the court must determine whether the court's exercise of jurisdiction over the defendant is consistent with due process. *Better Business Forms, Inc.*, 120 N.C. App. at 500, 462 S.E.2d at 833.

*Tejal Vyas, LLC v. Carriage Park, Ltd. P'ship*, 166 N.C. App. 34, 37, 600 S.E.2d 881, 884-85 (2004), *aff'd per curiam*, 359 N.C. 315, 608 S.E.2d 751 (2005).

### B.  Long-Arm Statute

Plaintiffs assert three subsections of North Carolina's long-arm statutes provide them personal jurisdiction over Trust 1997-1: (1) N.C. Gen. Stat. § 1-75.4(1)(d); (2) N.C. Gen. Stat. § 1-75.4(5)(d); and (3) N.C. Gen. Stat. § 1-75.4(6)(b).

N.C. Gen. Stat. § 1-75.4(1)(d) (2003) provides that if the defendant is "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise[,]" personal jurisdiction exists. N.C. Gen. Stat. § 1-75.4(5)(d) (2003) states that if the plaintiff shipped "goods, documents of title, or other things of value from [North Carolina to the defendant on its] order or direction," personal jurisdiction exists. Under N.C. Gen. Stat. § 1-75.4(6)(b) (2003), personal jurisdiction exists

[i]n any action which arises out of: A claim to recover for any benefit derived by the defendant through the use, ownership, control or possession by the defendant of tangible property situated within this State either at the time of the first use, ownership, control or possession or at the time the action is commenced[.]

### 1.  "Substantial Activity" and "Things of Value"

Trust 1997-1 correctly notes and our review of the record shows plaintiffs' claims against defendants arose out of allegedly "excessive

and illegal origination fees" and "unfair and deceptive acts associated with the making and collection of the loans." Trust 1997-1 had no connection with the origination of the loans, payment of the origination fees, and does not directly collect or direct the collection of loan payments. Trust 1997-1 has no employees and merely holds payments for the benefit of its certificate holders after receipt from its servicer in California. Trust 1997-1 neither engages in "substantial activity within this State" to satisfy N.C. Gen. Stat. § 1-75.4(1)(d) nor receives "shipped goods, documents of title, or other things of value" from North Carolina under N.C. Gen. Stat. § 1-75.4(5)(d).

## 2. Tangible Property

This Court addressed the applicability of N.C. Gen. Stat. § 1-75.4(6)(b) to a nonresident defendant who only had an interest in a note secured by a deed of trust on real property in North Carolina in *Whitener v. Whitener*, 56 N.C. App. 599, 601, 289 S.E.2d 887, 889, *disc. rev. denied*, 306 N.C. 393, 294 S.E.2d 221 (1982). In *Whitener*, the plaintiff filed a complaint in North Carolina state court against his exwife, a Florida resident. *Id.* He sought an accounting of payments she received in Florida from a purchase money note related to a pre-divorce sale of North Carolina real property. *Id.* at 602, 289 S.E.2d at 889. The defendant challenged the existence of personal jurisdiction. *Id.* at 600, 289 S.E.2d at 888.

The defendant's only connection to North Carolina was receipt of payments based on her sale of real property in North Carolina and the note she received secured by the deed of trust. *Id.* at 601, 289 S.E.2d at 889. Recognizing the "serious constitutional problems that would arise were we to hold otherwise," this Court granted the defendant's motion to dismiss stating, "[w]e believe that if we read G.S. 1-75.4(6)(b) to give the North Carolina court jurisdiction for a suit against the defendant for an accounting of money she received on the note it would violate the rule of *Shaffer*." *Id.* at 602, 289 S.E.2d at 889-90 (following the minimum contacts analysis in *Shaffer v. Heitner*, 433 U.S. 186, 53 L. Ed. 2d 683 (1977)).

Here, the only connection Trust 1997-1 has to North Carolina is less than three-percent of the mortgage notes it holds are secured by North Carolina real property. Trust 1997-1 is a New York common law trust with back offices in New York and California. It has no employees. Its servicer of the mortgage notes is an independent contractor located in California. *See Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (actions of an inde-

**SKINNER v. PREFERRED CREDIT**

[172 N.C. App. 407 (2005)]

pendent contractor alone are not enough to establish jurisdiction). Trust 1997-1 is an assignee holder of second mortgage notes. Trust 1997-1's connections to and contacts with North Carolina are even more tenuous than those asserted in *Whitener*. We hold these connections are not sufficient to satisfy North Carolina's long-arm statute.

Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law. In *Frazier v. Preferred Credit*, the United States District Court for the Western District of Tennessee, held Trust 1997-1, the same nonresident assignee defendants as here, did not engage in sufficient contacts with the forum state to justify the exercise of personal jurisdiction, and dismissed the plaintiff's claims. No. 01-2714 GB, 2002 WL 31039856 at 6-7 (W.D. Tenn., 2002) (Unpublished). The court relied on the facts that: (1) the defendants had no employees or agents in the state; (2) the defendants had no representatives that traveled to the state; (3) the defendants had not entered into any contracts, including second mortgage loans, in the state; and (4) the loans the defendants held secured by property in the state did not exceed two percent of the total loans they held. *Id.*

Under very similar facts and law, the Tennessee Court of Appeals held personal jurisdiction could not be extended to the defendants and dismissed the plaintiffs' claims. *See Hollingsworth, Inc. v. Johnson*, 138 S.W.3d 863, 869 (Tenn. Ct. App., 2003) ("One of the general principles of the law of assignments is that the assignee steps into the shoes of the assignor with regard to the matters covered by the assignment.") (internal quotation omitted), *appeal denied*, 2004 Tenn. LEXIS 289 (Tenn. Mar. 22, 2004). Here, the dissenting opinion notes we focus on the Trust's quantity, rather than the quality, of defendants' contacts as the basis to establish jurisdiction. Plaintiffs failed to establish either.

In light of our discussion that the subsections of N.C. Gen. Stat. § 1-75.4, as argued by plaintiffs, do not extend the long-arm statute to Trust 1997-1, we need not address the due process considerations. *See Tejal Vyas, LLC*, 166 N.C. App. at 37, 600 S.E.2d at 884-85 ("A court must engage in a two-part inquiry to determine whether personal jurisdiction over a non-resident defendant is properly asserted."). We hold the trial court properly dismissed plaintiffs' complaint against Trust 1997-1 for lack of personal jurisdiction. This assignment of error is overruled.

## V.  Statute of Limitations

**[2]** Although we hold plaintiffs did not have personal jurisdiction over Trust 1997-1, we also consider plaintiffs' assertion that the trial court erred in granting the Rule 12(b)(6) motion to dismiss due to expiration of the statute of limitations. We disagree.

Orally argued the same day and filed simultaneously with this opinion is *Shepard v. Ocwen Federal Bank, FSB, et al.*, 172 N.C. App. 475, 617 S.E.2d 61 (2005). In *Shepard*, we addressed the issue of accrual of the statute of limitations for claims of usury viola-tions and unfair and deceptive trade practices in the same factual scenario. *Id.* at 477, 617 S.E.2d at 63. *Shepard* holds the statute of limitations accrues on the date of closing. Our holding in *Shepard* provides an alternative basis to affirm the trial court's dismissal of plaintiffs' complaint.

The discussion in *Shepard* was limited to the usury claim due to the plaintiffs stipulating that their claim under N.C. Gen. Stat. § 75-1.1 was time-barred under the applicable statute of limitations. *Id.* at 482, 617 S.E.2d at 66. Plaintiffs do not so stipulate. Our analysis and discussion as applied to the usury statute of limitations in *Shepard* is equally applicable to plaintiffs' unfair and deceptive trade practices claim. *Id.*

The Skinners closed on their second mortgage on 22 January 1997. Their complaint was not filed until 3 December 2001, over four years after the closing date. The statute of limitations for both the usury and unfair and deceptive trade practices had expired. *See* N.C. Gen. Stat. § 1-52(2)-(3) (2003) (statute of limitations for usury claims is two years); *see also* N.C. Gen. Stat. § 75-16.2 (2003) (statute of lim-itations for unfair and deceptive trade practices claims is four years). As an alternative basis to affirm the trial court's order, the trial court properly granted defendants' Rule 12(b)(6) motion to dismiss on expiration of the statute of limitations on both claims.

**[3]** We further recognize this Court has addressed the issue of mort-gage holder/assignee's liability to borrowers for claims of unfair and deceptive trade practices based on execution of the original loan. In *Melton v. Family First Mortgage Corp.*, the plaintiff filed a complaint against the original lender and subsequent assignees of the mortgage note for unfair and deceptive trade practices, fraud, and civil con-spiracy. 156 N.C. App. 129, 132-34, 576 S.E.2d 365, 368-69, *aff'd per curiam*, 357 N.C. 573, 597 S.E.2d 672 (2003). The allegations arose

from activities occurring prior to and on the date of closing. *Id.* at 131, 576 S.E.2d at 367-68. With regards to the bank that purchased the mortgage shortly after its execution, we noted the plaintiff did not meet with the defendant's representatives, did not correspond with the defendant, and had no relationship with the defendant until after the defendant bought the mortgage subsequent to the closing date. *Id.* at 133, 576 S.E.2d at 369. As here, "there is no evidence that [the defendant] committed improprieties with regard to the execution of the mortgage." *Id.* We held a subsequent purchaser of a mortgage note who did not participate in alleged improprieties during the execution of the mortgage is not liable under N.C. Gen. Stat. § 75-1.1. *Id.*

There are no allegations that Trust 1997-1, as a subsequent purchaser of a mortgage note, had any connection to the execution of the mortgage note. Under *Melton*, plaintiffs' claim of unfair and deceptive trade practices against Trust 1997-1 fails. In light of our holding, we decline to address plaintiffs' remaining assignments of error.

## VI. Conclusion

The trial court properly dismissed plaintiffs' claims against defendants for lack of personal jurisdiction. As an alternative basis to affirm the trial court's order, the applicable statute of limitations governing both causes of action plaintiffs asserted accrued on the closing date and expired prior to plaintiffs filing this action. Trust 1997-1 is not liable under N.C. Gen. Stat. § 75-1.1 for allegations involving the execution of the mortgage. The trial court's order is affirmed.

Affirmed.

Judge McCULLOUGH concurs.

Judge BRYANT dissents.

BRYANT, Judge dissenting.

The majority holds the trial court properly dismissed plaintiffs' claims against Preferred Trusts 1997-1 (hereafter "the Trust" or "defendants") for lack of personal jurisdiction, finding that plaintiffs had not satisfied any of the sections of North Carolina's long-arm statute that plaintiffs asserted. I strongly disagree and therefore respectfully dissent from the majority opinion because I believe North Carolina has personal jurisdiction over the Trust pursuant to both N.C. Gen. Stat. §§ 1-75.4 (1)(d) and (6)(b). Furthermore, I am of

the opinion that to allow out-of-state defendants, who are associated with enforcing contracts charging usurious loan fees to in-state residents, to escape the purview of North Carolina jurisdiction, would not only hinder the purpose and effect of our long-arm statute, but would also contravene North Carolina's strong public policy against predatory lending practices, and deny North Carolina citizens the protections guaranteed by the laws of this State.

## I. Existence of Personal Jurisdiction

In determining whether a North Carolina court may exercise personal jurisdiction over a defendant, the court must undertake a two-part inquiry: "First, the North Carolina long-arm statute must permit the exercise of personal jurisdiction. Second, the exercise of personal jurisdiction must comport with the due process clause of the Fourteenth Amendment of the United States Constitution." *Eluhu v. Rosenhaus*, 159 N.C. App. 355, 358, 583 S.E.2d 707, 710 (2003). The majority opinion states, because "the subsections of N.C. Gen. Stat. § 1-75.4, as argued by plaintiffs, do not extend the long-arm statute to 1997-1 Trust, we need not address the due process considerations." (at p. 8). I disagree because I believe two of the subsections of N.C.G.S. § 1-75.4 alleged by plaintiffs do, in fact, extend personal jurisdiction to defendants.

### A. N.C. Gen. Stat. § 1-75.4 Permits the Exercise of Personal Jurisdiction

#### i. 1-75.4(1)(d)

N.C. Gen. Stat. § 1-75.4(1)(d) provides that jurisdiction exists "[i]n any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party . . . [i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise."

There is a clear mandate that the North Carolina long-arm statute is to be construed liberally in favor of finding jurisdiction over a defendant. *See, Strother v. Strother*, 120 N.C. App. 393, 395, 462 S.E.2d 542, 543 (1995) ("In determining whether the "long-arm" statute permits our courts to entertain an action against a particular defendant, the statute should be liberally construed in favor of finding jurisdiction."); *See also, Marion v. Long*, 72 N.C. App. 585, 586, 325 S.E.2d 300, 302 (1985) ("The statute [N.C.G.S. § 1-75.4] should receive liberal construction, in favor of finding jurisdiction."); *See*

*also, Starco, Inc. v. AMG Bonding & Ins. Servs.*, 124 N.C. App. 332, 338, 477 S.E.2d 211, 216 (1996) ("Our courts have reminded us on numerous occasions that section 1-75.4 should receive liberal construction, favoring the finding of jurisdiction."); *See also, De Armon v. B. Mears Corp.*, 67 N.C. App. 640, 643, 314 S.E.2d 124, 126 (1984) ("This statute [G.S. § 1-75.4] is liberally construed to find personal jurisdiction over nonresident defendants to the full extent allowed by due process."), *rev'd in part on other grounds*, 312 N.C. 749, 325 S.E.2d 223 (1985).

According to the majority, defendants do not engage in substantial business activity with North Carolina because the Trust "had no connection with the origination of the loans, payment of the origination fees, and does not directly collect or direct the collection of the loan payments," and further, the Trust "has no employees and merely holds payments for the benefit of its certificate holders after receiving them from its servicer in California." I would hold, however, for the reasons which follow, that N.C.G.S. § 1-75 confers jurisdiction over the Trust.

In *W. Conway Owings and Assoc., Inc. v. Karman, Inc.*, 75 N.C. App. 559, 331 S.E.2d 279 (1985), the defendant, a clothing store, was incorporated and had its principal place of business in Colorado. The plaintiff, a North Carolina resident, purchased clothing from the defendant at its showroom in Denver, Colorado. *Id.* The clothing was shipped to North Carolina and, without being opened by the plaintiff, then shipped to Germany for resale. The order forms and invoices served as the contracts between the parties. *Id.* The plaintiff sued the defendant for alleged defects with the clothing, which were discovered once the shipment reached Germany. The defendant filed a motion to dismiss for lack of personal jurisdiction and the trial court denied the motion. *Id.* On appeal, this Court affirmed the trial court's decision, finding the exercise of personal jurisdiction proper because "[t]he goods . . . were delivered to North Carolina, the payments for the goods were made from North Carolina and the [plaintiff] corporation which claims a breach of warranty is domiciled in this State." *Id.* at 564, 331 S.E.2d at 282.

The instant case is similar in many respects to *Conway*. The loan agreements were initiated in North Carolina, the payments on the notes owned by the Trust were made from North Carolina, and plaintiffs to the class-action are domiciled in North Carolina. Further, like the Trust, the *Conway* defendant "ha[d] no sales or business office, telephone listing, bank account, mailing address, or employees in

North Carolina." *Id.* The contacts with our forum state are also similar. However, there is one significant difference—the interest in North Carolina property. The Trust defendants admit they maintain an interest in the property in North Carolina due to their ownership of the second mortgage notes. Conversely, the *Conway* defendant "ha[d] no interest in any property in North Carolina and [did] not receive or use textiles from North Carolina." *Id.* at 599, 331 S.E.2d 279. It is reasonable to conclude the defendant in *Conway* had a more tenuous relationship with this State than the Trust, given the lack of interest the *Conway* corporation had in North Carolina property. Nevertheless, this Court held the corporation was engaged in sufficient substantial activity to confer jurisdiction pursuant to N.C.G.S. § 1-75.4(1)(d). *Id.* at 561-62, 331 S.E.2d at 281.

The record in the case *sub judice* reveals that while only three-percent of the mortgage notes owned by the Trust are secured by North Carolina real property, that three-percent constitutes 114 loans in North Carolina with an aggregate value of over four million dollars ($4,001,614.61). The Trust is engaged in substantial activity within the State of North Carolina such that jurisdiction clearly exists under N.C.G.S. § 1-75.4(1)(d).

ii. **N.C.G.S. § 1-75.4(6)(b)**

N.C.G.S. § 1-75.4(6)(b) provides that personal jurisdiction exists:

[i]n any action which arises out of: A claim to recover for any benefit derived by the defendant through the use, ownership, control or possession by the defendant of tangible property situated within this State either at the time of the first use, ownership, control or possession or at the time the action is commenced [.]

The majority relies on *Whitener v. Whitener*, 56 N.C. App. 599, 289 S.E.2d 887, *disc. rev. denied*, 306 N.C. 393, 294 S.E.2d 221 (1982), to support its conclusion that N.C.G.S. § 1-75.4 (6)(b) does not provide a basis of jurisdiction. However, the majority omits key elements of the reasoning and holding in its application of *Whitener*.

In *Whitener*, the plaintiff and the defendant were married and residing in Florida when they sold a piece of real estate they owned in North Carolina. The parties accepted payment from the buyer through a purchase note secured by a deed of trust. *Id.* After the parties divorced, the defendant remained domiciled in Florida while the plaintiff moved back to North Carolina. The plaintiff later brought an action against the defendant to enforce an accounting of all monies

the defendant received toward payment on the note. The defendant challenged the existence of personal jurisdiction. *Id.* Similar to the case at bar, the plaintiff alleged N.C.G.S. § 1-75.4(6)(b) brought the defendant within the purview of North Carolina personal jurisdiction. *Id.* at 601, 289 S.E.2d at 889. The trial court granted the plaintiff's motion to dismiss, and this Court affirmed that decision on appeal. *Id.* at 603, 289 S.E.2d at 890.

The majority interprets *Whitener* to mean N.C.G.S. § 1-75.4(6)(b) does not permit jurisdiction over a non-resident defendant whose only interest in North Carolina is a note secured by a deed of trust on real property in this State. (at p. 7). According to the majority, *Whitener* suggests such a connection is not sufficient to satisfy North Carolina's long-arm statute, and to read the statute so as to give the Court jurisdiction in that instance would violate the minimum contacts requirement of *Shaffer v. Heitner*, 433 U.S. 186, 53 L. Ed. 2d 683 (1977). (at p. 7). I disagree.

The *Whitener* court held there was a lack of personal jurisdiction over the defendant because there was no relationship between the property in North Carolina and the controversy between the parties. The Court referenced three cases to support its holding: *Shaffer*; *Balcon, Inc. v. Sadler*, 36 N.C. App. 322, 244 S.E.2d 164 (1978); and *Holt v. Holt*, 41 N.C. App. 344, 255 S.E.2d 407 (1979).

In *Shaffer*, the Court held "the fact that the defendants relied on Delaware law to protect their interests as stockholders did not give the Delaware court jurisdiction of the defendants in an action unrelated to their rights as stockholders." *Whitener* at 602, 289 S.E.2d at 889 (citing *Shaffer, supra*). In following *Shaffer, Balcon* held "there was not [] sufficient minimum contact[s] to support jurisdiction over a Maryland resident who owned real estate in this state when the plaintiff, also a Maryland resident, brought an action . . . on a claim that arose in Maryland and was unrelated to the North Carolina real estate." *Id.* at 601, 289 S.E.2d at 889 (citing *Balcon*, 36 N.C. App. 322, 244 S.E.2d 164). In *Holt*, "this Court held that the district court had jurisdiction over a resident of another state who owned real estate in North Carolina . . . [because] there were several factors which showed there was a relationship between the defendant's North Carolina property and the controversy between the parties." *Id.* (citing *Holt*, 41 N.C. App. 344, 255 S.E.2d 407).

From these cases, the *Whitener* Court perpetuated the following rule and applied it to the facts: in order for North Carolina's long-arm

statute to obtain personal jurisdiction over non-residents having an interest in real property in the state, there must be some relationship between that interest and the cause of action. *Whitener* at 601-02, 289 S.E.2d at 889-90; *See also, Balcon* at 326, 244 S.E.2d at 167 ("Where real property has *some* relation to the controversy, the interest of the State in realty within its borders, and the defendant's substantial relationship with the forum should support jurisdiction.") (emphasis added). The *Whitener* Court held that to "read [N.C.]G.S. § 1-75.4(6)(b) to give the North Carolina court jurisdiction for a suit against the defendant for an accounting of money she received on the note" would violate the *Shaffer* rule only because "[t]here [was] no dispute between the parties as to whether the note should be paid. The only dispute [was] what [] the defendant [did] with the payments." *Whitener* at 602, 289 S.E.2d at 889. In other words, "there was no indication that the sale [of the North Carolina property] was connected with the Florida action." *Id.* at 602, 289 S.E.2d at 890.

The majority's focus on the Trust's **quantity** of contacts with the State is irrelevant to the analysis in *Whitener*, which addressed the determination of a defendant's **quality** of contacts as the basis of establishing jurisdiction. In applying what I believe to be the correct rule of *Whitener* to the case *sub judice*, we must determine if there is some relationship between the Trust's interest in North Carolina property and the cause of action. Defendants' brief and the majority opinion both stress the notion that the Trust only *holds* the notes. However, they overlook the ownership factor. The Trust maintains ownership over the second mortgage notes, which means in the event the borrowers default on their loan payments, the Trust can foreclose on the property, collect the proceeds, and eventually take sole ownership. Therefore, defendant has a substantial interest in North Carolina property. As such, the notes defendant claims to merely hold for the benefit of the certificate holders, are connected to North Carolina property and the residents who live there. While the notes may continually change hands, the property to which they are affixed remains within the State.

The majority notes this cause of action arose out of "excessive and illegal origination fees" and "unfair and deceptive acts associated with the making and collection of the loans." (at p. 6). While the Trust was not involved in the initiation of the loans or setting the terms of the agreements, as an assignee of the notes, they assumed all rights, obligations, liabilities and benefits to which Preferred Credit would have been entitled. Once the notes were assigned, the Trust took the

place of Preferred Credit, and are treated as if the loans actually originated with the Trust. This has been a long-standing principle in North Carolina contract law. *Smith v. Brittain*, 38 N.C. 347, 354, 1844 N.C. LEXIS 157, 13 (1844) ("an assignee stands absolutely in the place of his assignor, and it is . . . as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties."); *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 664, 194 S.E.2d 521, 535 (1973) ("The assignee steps into the shoes of the assignor . . . .") (quoting *Cook v. Eastern Gas and Fuel Assocs.*, 129 W. Va. 146, 155, 39 S.E.2d 321, 326 (1946)); *Turner v. Beggarly*, 33 N.C. 331, 334, 1850 N.C. LEXIS 66, 7 (1850) ("an assignee is affected by the liabilities of his assignor"). Consequently, defendants cannot hide behind the argument that "the Preferred Trusts have not engaged in or transacted any business in . . . North Carolina [and] . . . have not made any contracts with any resident of . . . North Carolina[.]"

In its affidavit, defendants state that one of the purposes of the Preferred Trusts is to "receive income from the mortgage loans, including second mortgage loans." Through the servicers, the Trust receives monthly payments based on the terms of the original loan agreement. By receiving those payments, defendants are enforcing the loans. The borrowers initiated this cause of action to seek recovery of the usurious fees. These factors evidence the requisite relationship between defendants' interest in the North Carolina property and the cause of action to satisfy *Shaffer* and N.C.G.S. § 1-75.4(6)(b). For the above reasons, I believe plaintiffs satisfied the first step in the two-part personal jurisdiction inquiry, showing facts sufficient to establish jurisdiction pursuant to either N.C.G.S. §§ 1-75.4(1)(d) or (6)(b) of North Carolina's long-arm statute. Next, it is necessary to explore whether the exercise of personal jurisdiction violates defendants' due process rights.

## B. **Due Process Analysis**

A personal jurisdiction analysis is not complete until the court analyzes both elements of the two-part inquiry. By not engaging in the due process analysis, the majority overlooks the rule that due process "is the crucial inquiry and the ultimate determinative factor in assessing whether jurisdiction may be asserted under the 'long-arm' statute." *Phoenix America Corp. v. Brissey*, 46 N.C. App. 527, 530, 265 S.E.2d 476, 479 (1980); *see also, Chadbourn, Inc. v. Katz*, 285 N.C. 700, 706, 208 S.E.2d 676, 680 (1974) ("due process, and not the language of the statute, is the ultimate test of "long-arm" jurisdiction over a nonresident").

For the exercise of personal jurisdiction to comport with the Due Process Clause of the Fourteenth Amendment, *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945), a non-resident defendant must have minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." It is a well-settled principle that the determination of minimum contacts with the forum is not calculated by a mechanical test, but rather it varies depending on the facts of the particular case. *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 679, 231 S.E.2d 629, 632 (1977). Generally, there are five factors taken into consideration when determining the existence of minimum contacts: "(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties." *Rosenhaus* at 358, 583 S.E.2d at 710.

### i. **Quantity of Contacts**

Defendants have a substantial connection with the forum. As previously mentioned, defendants own the notes to 114 North Carolina mortgage loans worth over $4 million. The loan agreements serve as contracts between the borrowers and defendants, who are the assignees of Preferred Credit. A single contract is enough to satisfy the "minimum contacts" necessary to permit jurisdiction over a non-resident corporate defendant, so long as that defendant has purposefully availed itself of the benefits and privileges of the laws of the forum. *B. F. Goodrich Co. v. Tire King of Greensboro, Inc.,* 80 N.C. App. 129, 132-33, 341 S.E.2d 65, 67 (1986) (citations omitted). Here, defendants purposefully availed themselves of the privileges of North Carolina law. The loan agreements were initiated in North Carolina, and the Deed of Trust explicitly stated North Carolina law would govern the mortgage. Therefore, should any of the borrowers default on their monthly payments, the Trust would take advantage of North Carolina law to ensure payment. Should the default lead to foreclosure, the Trust would expect the full support of North Carolina law in the acquisition of the properties. Defendants would expect these protections as to each of the 114 loan agreements. However, it is common practice in our courts to require a foreign corporation doing business in North Carolina and accepting the benefits of our laws to be subject to jurisdiction. *See, Central Motor Lines Inc. v. Brooks Transp. Co.,* 225 N.C. 733, 739, 36 S.E.2d 271, 275 (1945), *questioned in Atlantic C. L. R. Co. v. J. B. Hunt & Sons, Inc.,* 260 N.C. 717, 133 S.E.2d 644 (1963) ("to the extent that a corporation exercises the priv-

**SKINNER v. PREFERRED CREDIT**

[172 N.C. App. 407 (2005)]

ilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."); *See also, State Highway & Public Works Com. v. Diamond S.S. Transp. Corp.*, 225 N.C. 198, 203, 34 S.E.2d 78, 81 (1945) ("[North Carolina law] prevent[s] a foreign corporation from accepting the protection of our laws in the transaction of its ordinary business, create obligations, and by reason of its remoteness from any forum available to a local citizen, secure immunity from liability.").

### ii. **Quality and Nature of Contacts**

It is reasonable to conclude the Trust's activities in North Carolina were continuous and systematic. *See, e.g., Jaeger v. Applied Analytical Indus. Deutschland GMBH*, 159 N.C. App. 167, 582 S.E.2d 640 (2003) (If a foreign corporation engages in continuous and systematic activities within the state, minimum contacts sufficient to comport with due process exist). Defendants have been in contact with the forum for a considerable period of time and have established longevity. The "Origination Months" table, found within the Prospectus Supplement submitted in the record, reveals that the collection of HLTV mortgage loans purchased by the Trust were originated by Preferred Credit between June 1995 and February 1997. When those loans were consolidated under the 1 March 1997 Pooling Service Agreement, the notes became the official property of Preferred Trusts 1997-1. While it is well-settled law that the mere ownership of property in the forum state is not enough to establish minimum contacts (*see e.g., Georgia Railroad Bank & Trust Co. v. Eways*, 46 N.C. App. 466, 265 S.E.2d 637 (1980)), the Trust has been admittedly "receiv[ing] income from the mortgage loans" since March 1997. As such, defendants have been in contact with North Carolina residents, and have owned notes attached to North Carolina property, for approximately four years prior to the initiation of litigation.[1] Also, defendants will be in contact with the state for a lengthier period since the notes ensure that the borrowers are locked into making payments on the loans for a term of fifteen years or more.

---

1. This action was filed 30 November 2001. However, it should be noted that had the action been filed in 2005, the Trust would have been in contact with North Carolina for approximately eight years.

In addition, defendants' activities span the entire state. This is a "class action on behalf of the *statewide class* of North Carolina residential real estate owners . . . ." (emphasis added). The 114 second mortgage loans originated by Preferred Credit are secured by real property located in several counties throughout North Carolina.

### iii. Source and Connection of Cause of Action to Contacts

The discussion regarding the relationship between the Trust's interest in North Carolina property and the borrower's cause of action set out in the *Whitener* discussion *supra*, applies to this factor as well.

### iv. Forum State's Interest in Litigation

This class action involves North Carolina residents. Furthermore, the loans are governed by North Carolina law, and the notes are secured by North Carolina real property. Also, this action involves predatory lending, an area of public concern in which North Carolina has pioneered legislation.

### iv. Convenience to Parties

The forum is convenient for the named plaintiffs and other class members as they are residents of North Carolina and filed their claims in North Carolina. The loans were originated and recorded in North Carolina, and the real properties securing the loans are located in North Carolina. Clearly, it is more convenient for plaintiffs to have their claims heard in a North Carolina forum.

Moreover, defendants would not be unreasonably burdened if North Carolina exercised personal jurisdiction over this matter. Even though defendants have corporate offices exclusively in New York and California, when Preferred Credit assigned the notes to the Trust, it absorbed all benefits and liabilities. Just as Preferred Credit would have expected to be hailed into the courts of North Carolina in the event of a dispute, the Trust, in taking the assigned notes, assumes the same obligations and liabilities as Preferred Credit. *Turner* at 334, 1850 N.C. Lexis at 7. Therefore, there is no unreasonable inconvenience placed upon defendants to appear in a North Carolina court.

In assessing the Trust's activities and contacts with the State in its totality, the exercise of personal jurisdiction would not violate "traditional notions of fair play and substantial justice"; thereby, comporting with defendants' due process rights. Therefore, I believe the trial court erred in granting defendants' motion to dismiss.

## C. **Persuasive Authorities**

The exercise of personal jurisdiction over a consolidated trust that owns mortgage notes secured to North Carolina property presents an issue of first impression in our courts. Therefore, we look to other jurisdictions to find persuasive authority that coincides with North Carolina policy. First, we distinguish a case addressed in defendants' brief, *Frazier v. Preferred Credit*, No. 01-2714 GB, 2002 WL 31039856 at *5-7 (W.D. Tenn. July 31, 2002). In *Frazier*, the Western District Court of Tennessee held that the non-resident assignee defendants, 1997-1 Trust, did not have sufficient contacts with the forum to justify the exercise of personal jurisdiction, relying on the fact that 1997-1 Trust had no agents in the forum state, had no representatives that traveled to the state, did not enter into any contracts with any state residents, and did not contract to supply any service or thing in the state. *Id.* at *6-7. Acknowledging that the defendant 1997-1 Trust is the same defendant in the instant case, it is important to note that the *Frazier* court said it was irrelevant and did not discuss "whether assignees of [] loans can be held liable for the actions of the original lenders" or determine "whether an assignment of a mortgage constitutes an ownership interest in the property." *Id.* at *2.

Therefore, a key portion of this important analysis concerning the rule that an assignee steps into the shoes of the assignor and assumes all obligations and liabilities, was omitted. *See, Smith* at 354, 1844 N.C. Lexis at 13; *See also, Rose* at 664, 194 S.E.2d at 535; *See also, Turner* at 334, 1850 Lexis at 7. Hence, even if our sister state, Tennessee, does not follow that rule, it is nevertheless a firmly rooted principle of North Carolina contract law.

Further, neither *Frazier* nor other cases cited by defendant for the same rationale[2] reflect North Carolina's long-standing public policy against predatory lending schemes and the charging of usurious fees. The rationale and holding in *Easter v. Am. West Fin.*, 381 F.3d 948 (9th Cir. 2004), is more in line with North Carolina cases discussing personal jurisdiction. The *Easter* court held as follows:

Here, the Trust Defendants have availed themselves of the protections of Washington law because they are beneficiaries of deeds of trust, which hypothecate Washington realty to secure

2. *See, e.g., Williams v. Firstplus Home Loan Owner Trust 1998-4*, 310 F. Supp. 2d 981, 993-94 (W.D. Tenn. 2004) and *Pilcher v. Direct Equity Lending*, 189 F. Supp. 2d 1198 (D. Kan. 2002).

payments on notes owned by the Trust Defendants. The deeds of trust convey a property interest in Washington realty, which interest the Trust Defendants expect Washington law to protect. In *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990), this court noted that holding a deed of trust "represents a significant contact with [the forum]." The Trust Defendants also receive money from Washington residents, albeit routed through the loan servicing companies who actually bill the payors. The Trust Defendants' income stream is derived from loans negotiated and executed in Washington and made to Washington residents.

Moreover, Borrowers' actions arise out of the Trust Defendants' contacts with the forum because the suit is for recovery of the allegedly excessive interest payments Borrowers made on their notes. Defendants bear the burden of proving that the exercise of jurisdiction would be unreasonable. *Bancroft & Masters*, 223 F.3d at 1088. They have produced no evidence to show that exercise of jurisdiction over them would fail to "comport with fair play and substantial justice." *Id.* Therefore, the district court erred in finding that it lacked specific personal jurisdiction over the Trust Defendants and we reverse the district court's order on this ground.

*Easter*, 381 F.3d at 960-61.

## II. **Public Policy**

North Carolina has a strong public policy of protecting its resident consumers and borrowers from any illegal transactions. *See Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 633-34, 394 S.E.2d 651, 656 (1990) ("North Carolina has a legitimate interest in the establishment and *operation of enterprises* and trade within its borders and the protection of its residents in the making of contracts with persons and agents who enter the state for that purpose.") (emphasis in original) (citation omitted); *See also* N.C. Gen. Stat. § 24-2.1 ("It is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws."). The North Carolina General Assembly, in furtherance of the consumer protection laws made.

North Carolina the first state in the nation to enact anti-predatory lending legislation. That legislation is preceded by the usury statutes discussed in this opinion. The goal of the usury statutes is to protect borrowers from falling prey to usurious lending practices. The

majority opinion as written contravenes the public policy of our Interest Statutes.

Further, the North Carolina long-arm statute is to be construed liberally in favor of finding jurisdiction over a foreign defendant. It is designed to enable the courts to assert personal jurisdiction over non-resident defendants to the full extent permitted by the due process clause of the Constitution. *De Armon*, 67 N.C. App. at 643, 314 S.E.2d at 126; *First Citizens Bank & Trust Co. v. McDaniel*, 18 N.C. App. 644, 646, 197 S.E.2d 556, 558 (1973), *overruled on other grounds*, *Buying Group, Inc. v. Coleman*, 296 N.C. 510, 517-18, 251 S.E.2d 610, 615-16 (1979).

### III. Conclusion

For the foregoing reasons, I believe the trial court erred in dismissing plaintiff's claims for lack of personal jurisdiction.